States v. Jones May it please the Court, Cheryl Gordon-McLeod on behalf of Mr. Jones. The parties agreed that at the time Jones recruited the purchasers, he was not aware of the Miracle Car Deal was a fraud. That's a quote from the government's brief. That leaves us with the key question of timing, whether the wire fraud statute criminalizes obtaining money innocently but later retaining it after the fraudulent intent develops. I hasten to add that it's not the only question, because Mr. Jones is entitled to withdraw his plea for any fair and just reason, so I don't have to prove complete invalidity of the plea. But it's certainly a key question and the question I'm going to focus on here. And on that key question, I'm going to start backwards with the government's strongest arguments, which I perceive to be the government's strongest argument in the case in Carpenter and the Ninth Circuit cases concerning the two clauses of the mail fraud statute. Let me deal with their argument about the two clauses first. And, of course, this is the argument that the first clause of the fraud statute, criminalizing a scheme or artifice to defraud, establishes a separate crime from the second clause of that statute, which says, or for obtaining money or property by false or fraudulent pretenses. Are you saying that there can't be a scheme to defraud unless the property has been obtained by fraud that's the subject of the scheme? Do I make myself clear? I think so, and I think I agree with what you're saying. The – well, the government So there has to be an illegal obtaining. Correct. Or fraudulent obtaining. Correct. Does it have to occur at any particular time? Well, the statute says illegal obtaining. It doesn't say retaining. Well, suppose – suppose the property is in the hands, lawfully in the hands of a person, and then he decides to make use of it in an illegal fashion and to devise a fraudulent scheme. Hasn't he obtained the property then? Well, of course, that's the question here. When – let me start with Carpenter, because I think that's the case that the government uses to argue the point that he has obtained it only when he fraudulently uses it or uses it for his own purposes. Carpenter, of course, was the case where the reporter wrote the Hurt on the Streets column for the Wall Street Journal, and he was convicted under the Wire Fraud statute, the Supreme Court deciding, one, that that was a property interest, and, two, that that was embezzlement and that the fraud statute covered embezzlement. The question you're asking me is about timing. And the Carpenter case didn't cover timing, because in the Carpenter case, Winans, the reporter, actually had the intent to deceive his employer before he even obtained the property. The conspiracy in that case started in 1983, the conspiracy to take the Wall Street Journal's property and give it to the brokerage firm. After that intent, after that deceitful intent occurred is when Winans wrote his own columns and then gave them to the brokerage firm. So each time he turned it over to the brokerage firm, each time he actually wrote the article, he had the fraudulent intent, and each time he turned it over to the brokerage firm, he had the fraudulent intent. So Carpenter doesn't answer your question. I think that the ---- Kagan. Does Cleveland answer the question? Well, it answers it a little bit more closely, but I'm not going to say that it answers it perfectly. Cleveland, like McNally, said that the second clause of the fraud statute modifies the first clause of the fraud statute. So you can't have a scheme or artifice to defraud unless you have obtaining money or property by false pretenses. But Cleveland and McNally both did not deal with the timing issue. I cited a number of Ninth Circuit cases which cite the element to be proved as obtaining money by obtaining money or property with a fraudulent intent, but I think it's fair to say that none of those cases decided the obtaining versus retaining issue either. I think what we're left with is a situation where neither the Supreme Court cases explicitly decided the timing issue, none of the Ninth Circuit cases explicitly decide the timing issue. And so what we look at first is the language of the statute. The statute says, obtain property, obtain money or property by false or fraudulent pretenses. If they had meant to say retain, they would have said it. And the statute that came to mind when I was preparing for argument is the State statute, the State Robbery Statute, which says ---- which criminalizes obtaining or retaining property by force. And that's RCW 9A.56.190. Counsel, can't we just common sense say that, okay, he got the money, but he didn't really obtain it for his own purposes until he decided to hang on to it? Well ---- Isn't that a common sense approach to what really happened and what the criminality of this is? Let me answer that by saying I think there's two common sense approaches. One is yours, which is a plausible interpretation. Another plausible interpretation is that the obtaining occurred when he put his hands on it, put it wherever in the bank account that he put it in, but he didn't know that fraud occurred until he, who was originally a victim of the scheme, developed the intent to deceive himself and then put that money to his own purposes and failed to return it to the investors when they asked for it back. Now, the significance of there being two plausible alternatives, of course, is the rule of lenity. And that's where I get back again to McNally and Cleveland, the U.S. based on the rule of lenity, McNally holding that the mail fraud statute covers only property rights, not nonproperty rights, and the Cleveland case holding that the license to operate poker machines didn't fall within the scope of property rights. And both of those cases said that we will not expand the reach of the Federal Fraud Statute, which could plausibly put anything within its scope unless there's clear congressional language that they intended to include this. In McNally, there wasn't clear congressional language because of the obtaining money or property by fraudulent pretenses clause. I think the same thing is true here. Your interpretation is certainly plausible. I think my interpretation is plausible as well. I think under McNally and Cleveland, the Court is compelled to apply the rule of lenity to say that the fraud statute does reach this far. At some point, he did devise a scheme to defraud. At some point, he became a crook. He decided to take the money that they had already given to him and to use it for himself. So why can't we just stop there and say he did devise a scheme to defraud? Well, I think a State prosecutor could stop there and say it's theft or it falls within one of the myriad theft statutes that the State has on its books. But fraud is explicitly defined under 1341. It's not just a scheme to defraud of any sort. It's also modified by that second clause for obtaining money or property. But there's an or in there. I agree. There's the disjunctive. But McNally talked about what that disjunctive meant and explicitly said many of the courts of appeals have held that the disjunctive being there means that there's two separate ways to prove this. McNally explicitly rejected that at 483 U.S. at 359. Going back to Durland and coming to that conclusion, if it wasn't completely clear from the McNally opinion that they rejected that interpretation, it's certainly clear from the dissent which criticizes the majority for rejecting that interpretation. And then we have Cleveland 13 years later in the year 2000 in which the government once again makes the argument that or means that there's two separate crimes and or is combining them in the disjunctive. And Cleveland said, no, we reaffirm McNally. There are no two separate crimes defined by the statute. The latter clause modifies the first clause. And so my argument is based on the notion that the government does have to prove obtaining money or property by means of false or fraudulent pretense. The government couldn't they could not prosecute a fraudulent scheme where the defendant or the perpetrator, excuse me, obtain the money lawfully, initially, and then converts it into a fraudulent scheme. That's immune. That's immune under the mail fraud and the wire fraud statutes. There's certainly other statutes that could possibly reach it, and there's certainly a myriad of State statutes that could reach it. Well, I'm talking about Federal prosecution. Not under the mail or wire fraud statutes. Would that be true if Jones had been, say, a fiduciary, he receives the money. He doesn't obtain the money. He receives the money in the fiduciary capacity. Then he transfers it to himself for the fraudulent scheme. Well, I think there's a little bit of a different analysis for fiduciary because there's a couple of cases that were cited in the briefs on nondisclosure, whether nondisclosure is sufficient to prosecute under the mail and wire fraud statutes. And the Dowling case from this Court is the one that said that is sufficient, but only where there's an independent duty to disclose. And the duty in that case was statutory, and there was another case cited in which the duty was fiduciary. So I think the answer to your question is, yes, if there's a fiduciary duty, it would be treated differently. Thank you. Thank you. May it please the Court, counsel. My name is Helen Bruner. I'm here representing the United States. I think Judge Schwarzer actually has put his finger on the heart of the issue here. And it is a bit of semantics to say obtaining versus retaining, because what Mr. Jones did here, while he may not have believed at the start, and no one is disputing, that he had no knowledge that the Miracle Car deal was fraudulent at the start, or at least that he did not believe it was fraudulent at the start. Nonetheless, he made promises that he would hold that money safe and that he would keep it in trust and he wouldn't turn it over until the cars were available, as I understood it, in March of 2002. The problem with all of this is he does form an intent to use this money for his own purposes, and thereafter makes a series of false statements related to the use of that money for his own purposes. And I think it's fair to say that, really, there can be sort of two points in time where there is money obtained. He takes that money, he holds it, and whether you're calling it a legal fiduciary duty or based on a promise, he had it for only one purpose. And at the point at which he starts to use it for his own purposes, he's committed that fraud, and he's now lulling people into the fraud by making a series of statements thereafter in terms of what happens to their money. With respect to the argument on the Carpenter case, the Wall Street Journal case, I think counsel may be right with respect to the second and third and fourth article where he turns them over in advance of publication. But when he gets the information for the first article, did he conceive at that point that he received that information for purposes of his fraud or for purposes of writing the column? And much the same is true here for Mr. Jones. I don't think that the — although it could be stated more clearly in the plea agreement, I would be the first to admit this. But what's clear here is that he solicits 45 people over a period of time, and that he makes representations, and that he uses that money. So at some point, he's also making his own fraud here by using the money while soliciting more people. I think that's also quite clear. He didn't wait until the very last money was in, of the 1.9, before he started to spend the money to buy a golf — a golf course in — on the San Juan Islands, among other things. I don't think — I do think this case turns entirely on the question of whether or not there was sufficient evidence. I believe there was sufficient evidence. And based on this record, I don't think that the district court abused its discretion in denying Mr. Jones the right to withdraw his guilty plea. Just to address that for a moment, this is not a case where the Rule 11 colloquy was inadequate. This is not a — which would — might raise a different standard. This is not a case in which the law has changed in any way, such as in the case of the Ascanio case. And this is not a case where there was Rule 11 error or new evidence. The evidence was not new. Everything that was presented now was presented then. The case law on mail fraud was the same. So certainly maybe new cases, but nothing really had changed between the time of his guilty plea and his desire to withdraw that guilty plea that was set forth in a motion filed only after his third continuance to — request to continue sentencing was denied. Ginsburg. In a situation where the statute is ambiguous and his interpretation through his new lawyer is not unreasonable, should he be allowed to withdraw his plea agreement? Well, Your Honor, I think that — first of all, let me say with respect to — I'm pausing a minute here because I'm wanting to address both the rule of lenity question because I don't think that the statute is — is as ambiguous as suggested. Well, this was a hypothetical guilty plea. But hypothetically, if the statute were completely — if the statute were ambiguous and we were less than clear, then that might form a fair and just reason to withdraw the guilty plea. But I don't think that that's where we are, nor do I think that he was misled in any way. And therein lies the problem, because the elements that were laid out at the time of his guilty plea were precisely the elements that we're arguing about here. He admits — and I believe that's at ER 71 — after the colloquy with counsel, he admits that the factual statement set forth in the plea agreement is, in fact, true and correct. And it does talk about the fact that he had promised, when he obtained that money, he had promised to keep it safe, and then he proceeds to use it for other purposes. Is the record clear that he continued to solicit funds after he had entered into his criminal activities? Your Honor, to answer that question, I think it's probably less than the model of clarity than I would like. The reference before the district court is at ER 111. Unfortunately, that is in the context of the sentencing hearing and not at the time of the plea. Where we get to that in terms of the plea is the fact that he solicited individuals throughout 2001, obtained, I believe, in May of 2001, the first monies, and that fraud continues until the following year. And I believe it says through February, at least, of 2002, he obtained monies. And it talks about the fact that he diverted the monies, but it is not the clarity that I would prefer to be in front of you arguing on. If we're in a situation where he's ultimately wrong, if we agreed with the government on the first issue of a statutory interpretation, does that necessarily mean that he shouldn't have been able to withdraw his plea if he was operating, in a sense, in a different framework in terms of the elements? Well, Your Honor, I don't think that to answer your question, I don't, first of all, perhaps not to answer your question, I don't think he was operating in a different realm, relying upon the representation that his resultant sentence would be probation. Here, he knew full well the consequences of the plea. Really, what we have here is not that he misunderstood the consequences of the plea, but perhaps, at best, that he misunderstood that perhaps he had an additional argument to make at trial. And, in fact, what I think is most telling is that the motion to withdraw comes at a point in time when he's denied the continuance, the third continuance, where he's asking for the possibility of meeting with Erwin Schwartz to discuss whether or not this, in fact, was an appropriate plea, not because he really wanted to withdraw on his plea, that I believe is in the pleadings of counsel and also in the SCR. There's a footnote, actually, I believe it's footnote 6, and I don't remember the page, in the SCR, where he indicates even while this briefing is ongoing on the motion to dismiss, this is not really a motion to withdraw, that he's really sure he really wants to withdraw, but he wants that additional time. If the Court has no further questions for me, then I will ask the Court to affirm. Thank you, Ms. Bruner. You may have a minute for Rebuttal, Ms. McLeod, if you'd like. Thank you, Your Honor. I think the only thing I'll call the Court's attention to is something in the factual record, ER 70 and 71. The question was about whether the record is clear about whether Mr. Jones ever solicited any funds after he got the intent to deceive. And I think ER 70 and 71 clarifies that the answer is no. The guilty plea didn't acknowledge any lies or intent to deceive when Mr. Jones took the money. ER 70 shows that the magistrate judge taking the plea predictably asked, well, then, did he agree that he obtained the money by material false and fraudulent pretenses? He answered no. He said, the lawyer said, quote, when he first became aware of and involved in the Miracle Car Deal, he did not know there was anything fraudulent about it, and continued, quote, he acquired the money in good faith, but he disposed of it unlawfully and used the wires to misrepresent that to the owners. After that is when the defendant agreed with that statement. Thank you. Thank you. I thank both counsel for your argument this morning. The case of United States v. Jones is submitted and we're adjourned for the morning. All rise. This court has its second hearing. All rise. This court has its second hearing. All rise. This court has its second hearing. All rise. This court has its second hearing.  This court has its second hearing. All rise. This court has its second hearing. This court has its second hearing.
judges: B. Fletcher, McKeown, Schwarzer